**In re WAPI, INC., Debtor.**

**Bankruptcy No. 92–09350–TOM.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

April 19, 1994.

---

J. Patrick Darby, Birmingham, AL, for WAPI, Inc.

Richard P. Carmody, Birmingham, AL, for Star Media Group, Inc.

Eric W. Anderson, Atlanta, GA, for MLQ Investors, L.P.

## MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Bankruptcy Judge.

This proceeding is before the Court on Star Media Group, Inc's Application for Employment Nunc Pro Tunc and Award of Compensation, and the objections thereto filed by the Debtor, WAPI, Inc., and MLQ Investors, L.P. Appearing at the March 30–31, 1994, hearing of this proceeding were J. Patrick Darby, attorney for WAPI, Eric Anderson, attorney for MLQ, and Richard P. Carmody, attorney for Star Media. This Court has jurisdiction. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). The Court has considered the testimonial and documentary evidence, and concludes that the objections to Star Media's application are due to be sustained, and that the application is due to be denied.[1]

WAPI operates FM and AM radio stations in Birmingham, Alabama, and filed for Chapter 11 protection in December of 1992. Prior to and following the Chapter 11 filing, WAPI owner Bernard Dittman was attempting to market the station. On March 27, 1990, Dittman granted Americom Media Brokers, Inc., the sole and exclusive right to locate and procure a purchaser for WAPI. Under the terms of the contract with Americom, Americom had 90 days within which to market the station, and the agreement could be cancelled at any time after the 90 days upon 10 days written notice. Applicant's Ex. 3. Also pursuant to the agreement, Americom was to register as protected buyers no more than five potential purchasers it had contacted during the 90-day period, if that period ex-

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

pired without a contract for sale having been executed. Applicant's Ex. 3, ¶ 3. By a letter dated October 17, 1990, Dittman advised Americom's Paul Leonard that the 90–day agreement had expired and requesting the registration of five potential purchasers. Applicant's Ex. 4. Leonard responded, by a letter dated October 23, 1990, giving Dittman a list of five potential purchasers, none of which is the buyer that entered into the purchase agreement with WAPI. Applicant's Ex. 5. Leonard closed the October 23 letter with the following paragraph: "Thank you for allowing us to work on this with you, Bernie. I wish you the best of luck in your future efforts to market WAPI (AM/FM)."

After the expiration of the original agreement, Leonard left Americom and started Star Media, which he testified is now one of the nation's largest media brokers.

In August of 1991, Dittman and Leonard, on behalf of Star Media, met in Dallas and discussed several topics. A letter from Leonard to Dittman dated August 22, 1991, makes a passing reference to Dick Broadcasting Company (DBC). Applicant's Ex. 6. However, DBC was characterized in Leonard's letter as a somewhat minor player in any potential sale of WAPI. Also in the letter, Leonard requested the opportunity to work with Dittman on an exclusive basis in marketing WAPI. However, Dittman did not thereafter treat Leonard as his exclusive broker, as shown by Applicant's Exhibits 7 and 8, which indicate that Dittman was also in contact with Blackburn & Company, an Atlanta media broker.

By a letter dated May 26, 1992, however, Dittman granted Leonard and Star Media an exclusive agreement as to three potential purchasers, including DBC.[2] Applicant's Ex. 9. Although the letter was issued from Dittman to Leonard, the testimony established that Leonard actually drafted the terms of the agreement. According to the agreement,

if either of the three named buyers signed a purchase agreement for WAPI within six months or purchased WAPI within 12 months, Leonard would receive a commission. Leonard was also to encourage any purchaser to pay all or part of the commission. Applicant's Ex. 9. None of the three entities named in this agreement signed a sales contract within six months or purchased WAPI within 12 months of the date of the agreement.

Following the expiration of the aforementioned letter agreement, it is undisputed that Leonard and Dittman continued to communicate with each other regarding the sale of WAPI. These communications included telephone conversations, and facsimile transmissions of financial and other information concerning WAPI. Leonard contends that these communications establish that the agency relationship between Star Media and WAPI was extended beyond the natural termination of the original agreement. The Court does not agree, and finds that any agency relationship created by the May 26, 1992, agreement expired on May 26, 1993, when neither DBC nor the other two entities named in the May 26 agreement had purchased WAPI.

On November 10, 1993, DBC and WAPI entered into an asset purchase agreement. Leonard claims that, because he brought DBC to the bargaining table originally, he has earned a commission. For the reasons set forth below, the Court does not agree.

■■■ Bankruptcy Code Section 327 requires that a trustee serving in a case under Title 11 receive the court's approval for the employment of professional persons to "represent or assist the trustee in carrying out the trustee's duties" under Title 11. 11 U.S.C. § 327(a).[3] The necessity of complying with Section 327 also applies to debtors in possession. 11 U.S.C. § 1107. The plain language of the Code does not give the professional sought to be employed the power to

---

2. Dittman made an exception that if the general manager of WZRR–FM, a DBC property in Birmingham, purchased WAPI independent of DBC, then Star Media's exclusive agreement was not applicable and no commission or fee would be payable to Star Media.

3. The parties do not dispute that Star Media is a professional within the meaning of Section 327, nor is that fact capable of dispute. *See, In re Providence Television Ltd. Partnership,* 113 B.R. 446 (Bankr.N.D.Ill.1990) (media broker hired to sell television station is a professional subject to Section 327 approval).

apply to the court for approval; only the trustee or debtor in possession may make that application. "Nowhere do the Code or the [Federal] Rules [of Bankruptcy Procedure] authorize professionals to seek court approval—*nunc pro tunc* or otherwise—for their own employment." *In re Office Products of America, Inc.,* 136 B.R. 675 (Bankr. W.D.Tex.1992). Federal Rule of Bankruptcy Procedure 2014 clearly states that an order approving the employment of professionals "shall be made only on application of the trustee or committee." Fed.R.Bankr.P. 2014. In argument via its brief in this proceeding, Star Media asserts that it may make this application because WAPI and Dittman have no incentive to request Star Media's employment. This argument, however, misses the point. It is not relevant to this Court whether WAPI or Dittman have incentive to seek Star Media's employment. They have not done so, and because the Code and Rules require that only they may do so, this Court has no authority whatsoever to approve Star Media's employment by its own application.

■ Star Media, however, requests that this Court exercise its equitable power to approve its application for employment. Although the Court may, under Bankruptcy Code Section 105(a), "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, 11 U.S.C. § 105(a), the bankruptcy courts must practice these equitable powers within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Johnson v. First National Bank of Montevideo, Minn.,* 719 F.2d 270 (8th Cir.1983) *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Texas Consumer Finance Corp.,* 480 F.2d 1261 (5th Cir.1973). The bankruptcy courts may not use their equitable powers if to do so would strip another Code provision of its meaning, *In re Plaza de Diego Shopping Center, Inc.,* 911 F.2d 820 (1st Cir.1990); *In re Minor,* 115 B.R. 690 (D.Colo.1990); *Lerch v. Federal Land Bank,* 94 B.R. 998 (N.D.Ill. 1989), or as one court has more eloquently

said, Section 105(a) does not necessarily "constitute a roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986). In this case, granting the relief Star Media requests would eviscerate Section 327 and its mandate that the trustee (or debtor in possession) or committee seek the approval of the professional sought to be employed.

■ Even if the Court were inclined to ignore the law and allow Star Media to make its own application, the application could not be approved. In *Office Products, supra,* the bankruptcy court thoroughly analyzed the law concerning *nunc pro tunc* approval of professionals. 136 B.R. at 683–684. Star Media fails to meet the test set out in *Office Products.*[4] The burden for meeting the *Office Products* test is strict; the applicant must show, by clear and convincing evidence, that all of the nine factors are met. The Court will discuss each factor, making additional findings of fact as necessary.

*The debtor, trustee, or committee expressly contracted with the professional to perform the services which were thereafter rendered*

Star Media does not dispute that no express contract existed after the expiration of the May 26 agreement one year after its execution. In its brief, Star Media encourages this Court to find an implied contract, based on the course of dealing between Star Media and WAPI. This Court is not inclined to find such a contract. Even if the Court did find an implied contract, it would not help Star Media, because the first factor of the *Office Products* test requires an express contract.

The Court believes that the purpose in requiring an express contract is to prevent the situation that has occurred in this case. The orderly and efficient administration of the bankruptcy estate is interrupted by entities coming forward with their hands out looking for payment to which they claim they are entitled. Leonard, who claims and appears to be a sophisticated and experienced business person, should readily grasp the

---

**4.** The *Office Products* factors were derived from *In re Willamette Timber Systems, Inc.,* 54 B.R.

485 (Bankr.D.Or.1985) and *In re Twinton Properties,* 27 B.R. 817 (Bankr.M.D.Tenn.1983).

importance of an express contract. It was his responsibility to have made sure that he had one. He undertook that responsibility earlier when he initiated, drafted, and obtained the letter agreement of May 26, 1992, which expired by its own terms one year later.

*The party for whom the work was performed approves the entry of the nunc pro tunc order*

Clearly, this is not the case. WAPI, on whose behalf Star Media purportedly worked, objects to the *nunc pro tunc* approval of Star Media's employment. Therefore, Star Media has failed to prove the second factor of the *Office Products* test.

*The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections*

Star Media failed to show by clear and convincing evidence that all creditors received notice of its application. In fact, no evidence was offered concerning the notice requirement.

*No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order*

Both WAPI and its largest secured creditor, MLQ, object to the entry of the order approving Star Media's employment. The Court finds that both objections are reasonable.

*The professional satisfied all the criteria for employment pursuant to Bankruptcy Code Section 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided*

In its application, Star Media asserted that it met the Section 327 requirements that it is a disinterested person and does not hold an interest adverse to the estate. Although, no evidence was offered that Star Media is not disinterested or does not hold an interest adverse to the Debtor's estate, neither the Debtor nor MLQ raised this factor in their objections.

*The work was performed properly, efficiently, and to a high standard of quality*

The testimony at the hearing of Star Media's application established that Star Media was not involved in the negotiations that led to the sale contract between DBC and WAPI; the evidence shows only that Star Media brought DBC to the bargaining table originally. Star Media's evidence does not show the standards followed in the media brokerage business, therefore the Court cannot make a judgment about whether the work was performed properly or to a high standard of quality. Dittman, however, at one point in his testimony referred to some work that Star Media had done as "average." Dittman did, in a letter to Leonard, refer to Leonard's work as "exemplary." Applicant's Ex. 4. This reference was made, however, to work done under the Americom agreement, not the May 26 agreement, for which Star Media seeks compensation. Therefore, the Court concludes that Star Media did not prove this factor of the *Office Products* test.

*No actual or potential prejudice will inure to the estate or other parties in interest*

The estate will be severely prejudiced by the approval of Star Media's application. If the application is approved, the commission to Star Media will reduce by approximately $220,000.00 the funds that will be used to fund WAPI's plan of reorganization for payment to creditors including MLQ, a creditor objecting to Star Media's application. Therefore, this factor of the *Office Products* test is not met.

*The applicant's failure to seek pre-employment approval is satisfactorily explained*

Star Media has failed to convince the Court that its failure to seek approval was warranted. On direct examination Leonard testified that he had never dealt with a radio station in bankruptcy before, and that he was unfamiliar with the bankruptcy process or the necessity of bankruptcy court approval for employment of professionals. This testimony is clearly refuted by a letter he wrote to Allen Dick in August of 1992. In that letter, Leonard discussed the sale of WIKX–FM, another Birmingham station. At one point in the letter, Leonard writes, "To reiterate our fee arrangement, the bank has

requested that our fee ... be handled by the buyer so as to keep the bankruptcy court out of the fee approval business." Debtor's Ex. 18. Leonard, who does not dispute writing the letter, claims that it actually means something else. The Court finds that it is clear from this letter that Leonard had knowledge of a sale involving a radio station in bankruptcy prior to WAPI and that Leonard understood that the bankruptcy court must approve any commission. The tone of the phrase about keeping the bankruptcy courts out of the fee approval business indicates that Leonard should have known of the importance of getting this Court's approval for his employment. In this case, because Star Media did not seek this Court's approval for its employment, the Court must do as Leonard indicated and stay out of the fee approval business.

*The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals*

No evidence was offered that relates to this factor. Neither the Debtor nor MLQ raised this factor in their objections. However, because Star Media has the burden to show that this factor is satisfied and because it has failed to come forward with evidence relating to this factor, the Court cannot find that the final factor of the *Office Products* test is met.

Based on the foregoing, the Court concludes that Star Media has no authority to apply for approval of its own employment on behalf of the Debtor, and that even if it did it has not met the burden of showing that *nunc pro tunc* approval of its employment is warranted. Accordingly, it is

ORDERED, ADJUDGED, AND DECREED that the objections to Star Media Group, Inc.'s Application for Employment Nunc Pro Tunc and Award of Compensation are SUSTAINED. It is further

ORDERED, ADJUDGED, AND DECREED that Star Media Group, Inc.'s Application for Employment Nunc Pro Tunc and Award of Compensation is DENIED. It is further

ORDERED, ADJUDGED, AND DECREED that Star Media Group, Inc., shall receive no disbursement from the bankruptcy estate of WAPI, Inc., on account of Star Media's involvement in the sale of WAPI, Inc., to Dick Broadcasting Company.