**In re Jimmy R. TURNER, Debtor.**

**Jimmy R. TURNER, Plaintiff,**

**v.**

**UNITED STATES of America; Internal Revenue Service, Defendants.**

Bankruptcy Case No. 94–02405–BGC–7.
Adv. No. 94–00198.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

April 2, 1996.

M. Richard Hughes, Birmingham, Alabama, for Plaintiff–Debtor.

Richard O'Neal, Assistant United States Attorney, Birmingham, Alabama, for Defendants.

Thomas Reynolds, Trustee.

## MEMORANDUM OPINION ON RECONSIDERATION OF ORDER DETERMINING DISCHARGEABILITY OF TAX DEBT
## AND
## MEMORANDUM OPINION ON EQUITABLE ISSUES OF DISCHARGEABILITY OF TAX DEBT

BENJAMIN COHEN, Bankruptcy Judge.

### I. Procedure

In its Memorandum Opinion and Order of January 9, 1995 this Court considered whether the Internal Revenue Service should be allowed additional time to collect past due taxes from this debtor. The Court began its consideration with the general rule that income taxes due more than three years before the filing of a bankruptcy petition, and assessed more than 240 days before that filing, are dischargeable by way of 11 U.S.C. § 523(a)(1)(A).[1] The debtor contended that all of the taxes he owed were in fact more than three years old and consequently were dischargeable. The Service contended that the issue of dischargeability was never reached because the income tax three-year dischargeability period was interrupted by the debtor's filing of three prior bankruptcy cases, and when interrupted, was tolled by 26 U.S.C. § 6503(h), a non-bankruptcy provision of the Internal Revenue Code. The Service concluded that the tolling caused a delay in the discharge of the debtor's past due taxes, which delay, plus six months for each bankruptcy case filed, was then equal to the additional time the Service sought for collecting

---

1. Section 507(a)(8)(A)(i) of the Bankruptcy Code contains the three-year formula for calculating section 523(a)(1)(A) dischargeability. That section, 507(a)(8)(A)(i), was at the time of this Court's first opinion, section 507(a)(7)(A)(i). After enactment of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 304(c), 108 Stat. 4106, 4132 (1994), subsection (7) was renumbered and is now subsection (8); consequently, all references to section to 507(a)(7) in quoted material are references to section 507(a)(8).

the past due taxes.[2] On January 9, 1995 this Court held that a section 523(a)(1)(A) dischargeability is not tolled by the Internal Revenue Code and that the additional time sought by the Service was not allowed by the Bankruptcy Code. In addition this Court held that the debtor's past due income taxes were due more than three years before the instant bankruptcy petition was filed, were assessed more than 240 days before the petition was filed and were dischargeable pursuant to 11 U.S.C. § 727(a). *Turner v. United States (In re Turner),* 182 B.R. 317 (Bankr. N.D.Ala.1995).[3]

■ On the other hand, in its ruling this Court recognized certain equitable considerations that must be afforded the Service and the debtor in this matter, such considerations this Court believed it could consider pursuant to 11 U.S.C. § 105(a), the broad equitable powers conferred on bankruptcy courts by the Bankruptcy Code.[4] The Court invited

2. The technical issue was whether the three-year dischargeability formula found in 11 U.S.C. § 507(a)(8)(A)(i), for use in determining 11 U.S.C. § 523(a)(1)(A) dischargeability, was a three-year time allotment for the Service to assess and collect taxes or whether the provision established the duration of the debtor's tax liability. The Service argued that the non-bankruptcy law provisions found in section 6503 of the Internal Revenue Code, 26 U.S.C. § 6503(h) tolled the running of the three-year dischargeability provision applicable to sections 507 and 523 of the Bankruptcy Code, by way of section 108(c) of the Bankruptcy Code, 11 U.S.C. § 108(c). The Service argued that under sections 108(c) and 6503(h):

> [T]he time period that the Plaintiff was in the prior bankruptcy cases would not count toward the three year provision found at 11 U.S.C. § 507(a)(7)(A)(i). Therefore, the Plaintiff's liability for the tax, interest and penalty amounts for the tax years 1986, 1987, 1988 and 1989 would be entitled to unsecured priority status pursuant to · 11 U.S.C. § 507(a)(7)(A)(i) as the three year period was tolled while the Plaintiff was in prior bankruptcy cases and would in fact be extended by eighteen (18) months due to the three prior bankruptcy cases.

Answer of Defendant at 2–3, July 18, 1994. The Service calculated the tolled time period for the individual tax years based on the months each bankruptcy case remained active, and added to that amount six-months of compounded extensions for each bankruptcy case filed prior to each particular tax year. The Service's claimed additional time for each tax year in question is:

1986—3.42 years for the time spent in three prior bankruptcy cases, plus 1.50 years extension at six months each for each of the three prior cases.
Total—4.92 years of total tolled time.
1987—3.17 years for the time spent in two prior bankruptcy cases, plus 1.00 year extension at six months each for each of the two prior cases.
Total—4.17 years of total tolled time.
1988—3.17 years for the time spent in two prior bankruptcy cases, plus 1.00 year extension at six months each for each of the two prior cases.
Total—4.17 years of total tolled time.

1989—3.08 years for the time spent in two prior bankruptcy cases, plus 1.00 year extension at six months each for each of the two prior cases.
Total—4.08 years of total tolled time.
Exhibits B, C, D and E to Answer of Defendant, July 18, 1994.
The Service calculated the debtor's tax liability, as of April 24, 1995, the filing date of the current petition, as $15,483.02. Of that amount $7,365.64 is tax for the years 1988 and 1989, $6,365.70 is interest for all four years and $1,751.68 is penalties for all four years. Exhibit A to Answer of Defendant, July 18, 1994.

3. The Internal Revenue Service is no longer prohibited from assessing taxes during a bankruptcy case. 11 U.S.C. § 362(b)(9)(D).

4. The Court of Appeals for the Eleventh Circuit may want to consider the issue of whether this Court has the authority to invoke 11 U.S.C. § 105(a) to consider the equitable issues raised by the Court and addressed by the Internal Revenue Service. Many courts recognize, including this one, that section 105, "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986); *Olympia Holding Corp. v. Interstate Commerce Comm'n (In re Olympia Holding Corp.),* 161 B.R. 524, 528 (M.D.Fla. 1993); *In re Perlman,* 188 B.R. 704, 709 (Bankr. S.D.Fla.1995); *In re GGC Assocs., Ltd.,* 178 B.R. 862, 864 (Bankr.M.D.Fla.1995); *In re WAPI, Inc.,* 171 B.R. 130, 133 (Bankr.N.D.Ala.1994); *In re Sofa World of Tuscaloosa,* Case No. 95–03492–BGC–11 (Bankr.N.D.Ala. March 13, 1996). This Court views the instant situation however, as a refinement of the Court's review of the determination of the dischargeability of taxes and not as a creation of any substantive rights. Whether based on the same reasoning, other courts agree that a bankruptcy court may utilize section 105 in such situations. *United States v. Richards (In re Richards),* 994 F.2d 763, 765–766 (10th Cir. 1993); *Clark v. Internal Revenue Service (In re Clark),* 184 B.R. 728 (Bankr.N.D.Tex.1995); and *Solito v. United States,* 172 B.R. 837, 839 (W.D.La.1994). But as noted, the Court of Ap-

the Service to seek a determination of the equitable impact of a discharge of the debtor's obligation for certain taxes.[5] On January 18, 1995 in response to this invitation, the Service file both a *Motion for Reconsideration* of the January 9, 1995 memorandum opinion and order and a *Request for Evidentiary Hearing on All Equitable Issues.*[6] Pre-trial conferences and status conferences were held on the motion and the request.[7] The *Motion for Reconsideration* was granted by order of the Court on April 28, 1995, and although a specific ruling was not made on the request for an evidentiary hearing, the Court scheduled a trial on the evidentiary issues. A hearing was held on both the *reconsideration* and on all equitable issues. No testimony was presented although the parties agreed that the Court should consider certain information from the debtor's

three prior case files. The files from those cases, *Jimmy R. Turner & Kelly C. Turner*, No. 88–00085–RCF–7; *Jimmy R. Turner*, No. 90–03657–WEJ–13; and *Jimmy R. Turner & Dee Turner*, No. 92–08814–TOM–13, are before the Court.

On September 1, 1995, the Service filed a memorandum of law in support of its *Request for Evidentiary Hearing on All Equitable Issues*, after which both matters were taken under advisement. The parties agree that all evidence necessary to determine the matters is before the Court.[8] In Section II of this opinion the Court addresses the Service's request for reconsideration of this Court's January 9, 1995 order and in Section III, addresses the Service's arguments on equitable issues relating to the debtor's tax liability.[9]

---

peals for the Eleventh Circuit has not addressed the issue.

5. In its earlier opinion this Court wrote:

However, in regards to the taxes (but not the tax penalties), equity may be invoked by this Court to avoid any injustice which may have resulted to the IRS as a result of any dilatory or bad faith conduct on the Debtors' part in filing or prosecuting their previous Chapter 13 case, or as a result of failure of the safeguards built into the Bankruptcy Code to reasonably protect the ability of the IRS to collect taxes in the manner and extent provided for therein. While the facts which have been stipulated to by the parties and which the Court is able to glean from the record in this case and the arguments of counsel do not indicate, on their face, a situation appropriate for the application of equity, this Court is of the opinion that the IRS should have the opportunity to prove facts that might lead to a different conclusion, if it so desires, since the parties apparently were unprepared to address possible equitable issues at the previous hearing. Therefore, if the IRS makes a written request for an evidentiary hearing within ten days following the entry of this order, the Court will reset this matter to hear evidence and argument from both parties on the issue of the equitable tolling of the time periods of section 507(a)(7)(A)(i) and (ii).

*Turner v. United States (In re Turner)*, 182 B.R. 317, 340 (Bankr.N.D.Ala.1995).

6. The Service initially argued that the three-year dischargeability of the Bankruptcy Code was tolled by 26 U.S.C. § 6503(h) by way of 11 U.S.C. § 108(c). Although not abandoning that argument, the Service asks this Court to consider an equitable tolling of the three-year dischargeability period pursuant to 11 U.S.C. § 105(a). As noted above this Court agrees that it may consid-

er the Service's request but as also noted, the Court of Appeals for the Eleventh Circuit has yet to determine whether a bankruptcy court's authority under section 105 includes such a consideration.

7. Similar pleadings were filed in the related case of *Gore v. United States (In re Gore)*, 182 B.R. 293 (Bankr.N.D.Ala:1995) and similar conferences were held; however, all matters in *Gore* were resolved. An order dismissing the complaint with the consent of all parties was entered on November 9, 1995.

8. The parties stipulated to the facts for the initial stage of this litigation. That stipulation formed the basis of the Court's initial opinion and order. That opinion and order and the instant opinion and order constitute the Court's findings of fact and conclusions of law in regards to all matters for purposes of Fed.R.Bankr.P. 7052.

9. Other than as a part of this Court's general reconsideration of its first memorandum opinion and order, the Court has not, and this opinion does not, reconsider the issue of any liability the debtor may have for a tax penalty. In its earlier opinion this Court found, "The tax penalties ... were imposed with respect to events that occurred more than three years before the date the petition in this case was filed." *Turner*, 182 B.R. at 341. For two reasons this Court continues to believe that this finding is correct. The clear holding of the opinion of the Court of Appeals for the Eleventh Circuit in *Burns v. United States (In re Burns)*, 887 F.2d 1541, 1544 (11th Cir.1989) requires the dischargeability of these penalties, and, because of equity's historic abhorrence to penalties, equity should not be invoked pursuant to 11 U.S.C. § 105. At this stage of the litiga-

## II. Reconsideration of Memorandum Opinion and Order

This Court's opinion is unpopular not only with the Internal Revenue Service, but is also unpopular with most of the bankruptcy courts, district courts and courts of appeals considering the issue.[10] And although this Court's position in *Turner* has been described as a "myopic and out-of-context reading of the Bankruptcy Code....", *Waugh v. United States (In re Waugh)*, 1995 WL 714457 at *2 (D.Minn. Sept. 12, 1995), this Court continues to believe that its opinion, holding and position are not only correct but are also required by *Burns v. United States (In re Burns)*, 887 F.2d 1541 (11th Cir.1989) and *Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993) and *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995); consequently, for the reasons expressed below, the Court finds that the memorandum opinion and order entered in *Turner* should not be modified.

### A. Opposing View

The majority of courts considering the issue of dischargeability of taxes, where debtors have filed previous bankruptcy petitions have not only held that the prior bankruptcy petitions stopped the Service from collecting taxes but have also held that the prior petitions stopped the running of the debtor's three-year period for dischargeability of the taxes. But of the courts disagreeing with this Court, most if not all, find that taxes that fall into the category in question are excepted from discharge under 11 U.S.C. § 523(a)(1)(A), not because section 523(a)(1)(A) *does not* provide for the discharge of the taxes but because section 523(a)(1)(A) *should not* provide for the discharge of the taxes. A recently reported, well reasoned decision is exemplary. It reads in part:

> While the Court recognizes the apparent validity of the above [*Turner v. United States*] "plain language" approach, the majority of courts have determined that incorporation of the suspension provisions of the IRC through § 108(c) [11 U.S.C. § 108(c)] is appropriate to protect the government's interests, rather than adopting the plain language approach which would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims. *See In re West*, 5 F.3d 423, 427 n. 9 (9th Cir.1993) (collecting cases); *see also, Turner*, 182 B.R. at 325 n. 4 (collecting cases) (recognizing that a majority of courts have incorporated the suspension provisions of the IRC through § 108(c)); *In re Brickley, supra* [70 B.R. 113 (9th Cir. BAP1986)] (incorporating IRC § 6503 through § 108(c)).

*In re DiCamillo*, 186 B.R. 59, 61 (Bankr. E.D.Pa.1995) (parentheticals added).[11]

---

tion, this Court is not willing to extend the tolling provisions of 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(h) to 11 U.S.C. § 523(a)(7)(B).

**10.** *See Turner*, 182 B.R. at 325 n. 4. Since that note was compiled other courts have joined the majority. One of those is *In re Eysenbach*, 183 B.R. 365 (W.D.N.Y.1995) where the bankruptcy court's opinion in *In re Eysenbach*, 170 B.R. 57 (Bankr.W.D.N.Y.1994), a supporting component of this Court's opinion in *Turner* was reversed. Three additional cases, *Waugh v. United States (In re Waugh)*, 1995 WL 714457 (D.Minn. Sept. 12, 1995), *Shedd v. United States (In re Shedd)*, 190 B.R. 692 (Bankr.M.D.Fla.1996), and *In re DiCamillo*, 186 B.R. 59 (Bankr.E.D.Pa.1995) also joined the majority.

On the other hand, since *Turner* was published, two published cases, *Clark v. Internal Revenue Service (In re Clark)*, 184 B.R. 728 (Bankr. N.D.Tex.1995) and *In re Macko*, 193 B.R. 72 (Bankr.M.D.Fla.1996), and one unpublished case, *In re Saunders*, No. 94–23489–BKC–RBR (Bankr.S.D.Fla. Dec. 26, 1995) have agreed with this Court. In addition, since this Court's first opinion, the Court of Appeals for the Eleventh Circuit decided the case of *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995), and issued an opinion interpreting the intent of Congress in its enactment of the three-year statutory periods applicable to 11 U.S.C. §§ 507(a)(8) and 523(a)(1)(A).

**11.** The bankruptcy courts agreeing with the position this Court holds include: *In re Macko*, 193 B.R. 72 (Bankr.M.D.Fla.1996); *Clark v. Internal Revenue Service (In re Clark)*, 184 B.R. 728 (Bankr.N.D.Tex.1995); *In re Eysenbach*, 170 B.R. 57 (Bankr.W.D.N.Y.1994), *rev'd*, 183 B.R. 365 (W.D.N.Y.1995); *In re Deitz*, 106 B.R. 236 (Bankr.D.Colo.1989), *rev'd*, 116 B.R. 792 (D.Colo.1990); and, *Brown v. United States (In re Brown)*, 175 B.R. 766 (Bankr.W.D.Okla.1994) (reluctantly following *United States v. Richards (In re Richards)*, 994 F.2d 763 (10th Cir.1993) which held that the time periods are subject to tolling), and *see also Nelson v. Pennsylvania Higher Education Assistance Agency (In re Nelson)*, 183 B.R. 972 (Bankr.S.D.Fla.1995) where

The note accompanying the above reads, "It is well-settled that 'in rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters ..., the intention of the drafters, rather than the strict language controls.' *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982))." *Id.* at 61 n. 3.

## B. Plain Meaning, Legislative History and Congressional Action

How the meaning of a statute, plain on its face and presumably written originally by its drafters in the "bill and act" language that later appears in its codified form, can undergo a metamorphosis that transforms the meaning from something intended by its drafters to something contrary to the intent of those same drafters, is difficult to understand. Such a change would require courts interpreting the now statutory language to consider individual legislators' opinions on what the composite body intended when it enacted the statute. This raises the question, can statutory language ever be both plain on its face and contrary to the intent of its drafters. Presumably so, but this Court does not find that to be true in this case.[12]

---

the court holds, relying on a plain language approach, that language added to the dischargeability provisions affecting Health Education Assistance Loans did not effect the dischargeability of a debt in a bankruptcy case filed before that language was added. *In re Nelson* is discussed in Note 15 below.

**12.** On one hand courts are fortunate that legal matters are not subject to empirical proof, but on the other hand, when attempting to divine the intent of Congress, empirical proof would be helpful. As explained in many parts of this Court's earlier opinion and in the instant one, this Court accepts the time period, plain language of sections 507 and 523. The opposing view correctly recognizes that *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) stands for the proposition that the intention of the drafters of legislation controls over the strict language of legislation where in rare cases the literal application of the statute produces a result at odds with the intention of the drafters. Reliance on this proposition raises several questions. When litigants consider plain language, what is the first step? Where statutory language is clear, must one party argue that the court need not consider legislative history? Does *Ron Pair* require courts to consider legislative history in every circumstance regardless of the clarity of the statutory language? If legislative history is considered, must the litigant opposing the plain language interpretation produce legislative history that refutes the plain meaning of the statute? Must the litigant supporting the plain meaning view produce legislative history supporting the plain meaning view?

This Court was criticized by the court in *Waugh v. United States (In re Waugh)*, 1995 WL 714457 (D.Minn. Sept. 12, 1995) because this Court did not produce legislative history in opposition to this Court's opinion. The court in *Waugh* wrote, "There is no evidence in the *Gore* opinion [the related opinion in *Gore v. United States (In re Gore)*, 182 B.R. 293 (N.D.Ala.1995)]

of a conscious effort by Congress to deny the operation of any suspension provisions to the other periods of § 507(a)(8)(A)." *Id.* at *6. This Court holds the opinion that one indicia that the intent of the drafters of sections 507 and 523 is not at odds with the plain meaning of the statutes is that there is no legislative history relating to a "conscious effort by Congress to deny the operation of any suspension provisions to the other periods of § 507(a)(8)(A)." The lack of such history is, as this Court explained in its earlier opinion, significant support for the position that there is no congressional intent to suspend operation of the bankruptcy code provisions. On the other hand there is direct legislative history, as the Court of Appeals for the Eleventh Circuit explained in *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995), of a congressional awareness for tax evasion and the relationship of that awareness to the deliberate inclusion of a three-year dischargeability period for purposes of sections 507 and 523. Judge Stanley F. Birch, Jr. writing for the court explained:

Congress enacted section 523(a)(1)(A) and section 507(a)(8) to give taxing authorities time to pursue delinquent income tax debtors and to obtain secured status before the debtor can discharge his tax liability in bankruptcy.

Congress did not intend to grant the IRS an absolute priority in bankruptcy for delinquent taxes, however. Instead, sections 507(a)(8) and 523(a)(1)(A) except from discharge income and employment tax liabilities only for those taxable years ending within three years of the filing of a debtor's bankruptcy petition. See §§ 507(a)(8), 523(a)(1)(A). Congress imposed this three-year limit on the nondischargeability of income and employment taxes "because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence." H.R.Rep. No. 595, at 191, 1978 U.S.C.C.A.N., at 5787, 5963, 6151. The government's interpretation of section 523(a)(1)(C) effectively would eliminate the three-year time limit imposed by sec-

Before 1966 Congress prohibited the discharge of income taxes in bankruptcy. Section 17(a)(1) of the Bankruptcy Act of 1898 provided, "A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except as such ... are due as a tax levied by the United States, or the State, county, district or municipality...." Bankruptcy Act of 1898, ch. 541, § 17(a)(1), 30 Stat. 544, 550 (1898). But in 1966 Congress amended the Bankruptcy Act of 1898 to allow for, with certain considerations, the discharge of "taxes which became due and owing by the bankrupt to the United States or to any state or any subdivision thereof within three years preceding bankruptcy." Act of July 5, 1966, Pub.L. No. 89–496, § 2, 80 Stat. 270 (1966) (amending the Bankruptcy Act of 1898, ch. 541, § 17(a)(1), 30 Stat. 544, 550 (1898) (presently codified as amended at 11 U.S.C. § 507(a)(8)(A)(i) and 11 U.S.C. § 523(a)(7))). When the Bankruptcy Code was enacted in 1978, Congress continued to recognize the right to discharge three-year old taxes. Hence for the almost 30 years since July 1966, Congress has continued to recognized a debtor's right to a discharge of tax debts that become legally due and owing more than three years preceding bankruptcy, while at the same time recognizing that *other taxes and other debts should be excluded from discharge.* This is evident from the inclusion of certain discharge exceptions when the

Bankruptcy Code was enacted and the inclusion of others during the time since.

At the time the Bankruptcy Code was enacted, section 523 included *nine* exceptions to discharge. Since 1978, Congress has added *seven* new exceptions to 523.[13] But at no time has Congress modified, eliminated, or restricted the operation of the three-year period now found in section 507(a)(8)(A)(i). Simply put, Congress has not taken action to restrict or suspend, and presumably has never intended to restrict or to suspend, the three-year period of section 507(a)(8)(i) or the dischargeability of income tax debts under section 523(a)(1)(A).

The Court of Appeals for the Eleventh Circuit recognizes that such a failure to act has specific meaning. In comparing section 523(a)(1)(C) of the Bankruptcy Code to section 7201 of the Internal Revenue Code, a similar comparison to the Bankruptcy Code section 523(a)(1)(A) and Internal Revenue Code section 6503(h) relationship before this Court, Judge Stanley F. Birch, Jr. wrote:

Where Congress knows how to say something but chooses not to, its silence is controlling. *BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) (" '[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a

tions 523(a)(1)(A) and 507(a)(8)(A) and would give the IRS an open-ended priority for tax liabilities regardless of that agency's "lack of due diligence" in collecting properly reported tax liabilities.
*Id.* at 1160 (citations omitted).

**13.** In 1984 Congress added what is now 11 U.S.C. § 523(a)(9) excepting debts based on judgements resulting from a debtor's operation of a motor vehicle while legally intoxicated. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 371, 98 Stat. 333, 364 (1984). In 1990 Congress amended 11 U.S.C. § 523(a)(9) to include debts resulting from a debtor's operation of a motor vehicle while legally intoxicated which had not been reduced to judgement. Criminal Victims Protection Act of 1990, Pub.L. No. 101–581, § 2(a), 104 Stat. 2865 (1990). In 1990 Congress added what are now 11 U.S.C. § 523(a)(11) and 11 U.S.C. § 523(a)(12) excepting debts resulting from a debtor's defalcation or reckless behavior in association with obligations to Federal depository

institutions. Crime Control Act of 1990, Pub.L. No. 101–647, § 2522(a), 104 Stat. 4789, 4866 (1990). In 1994 Congress added what is now 11 U.S.C. § 523(a)(13) excepting debts resulting for a debtor's payment of restitution under federal criminal statutes. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320934, 108 Stat. 1796, 2135 (1994). In 1994 Congress added what are now 11 U.S.C. § 523(a)(15) and 11 U.S.C. § 523(a)(16) excepting debts resulting from a debtor's domestic separation agreement and a debtor's membership fees associated with condominium ownership. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 304(e), 309, 108 Stat. 4106, 4133, 4137 (1994). *In 1994 Congress added what is now 11 U.S.C. § 523(a)(14) excepting a debtor's debt for money borrowed to pay a tax that would otherwise be nondischargeable, Id.* at § 221, 108 Stat. 4129, *a final addition clearly demonstrating that the dischargeability of income taxes was in the forefront of Congressional action, but again Congress choose not to amend either section 523(a)(1)(A) or 507(a)(8)(i).*

statute but omits it in another,' and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism.") (citation omitted) (quoting *Chicago v. Environmental Defense Fund*, 511 U.S. ——, ——, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)); *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir.1990) (" ' "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." ' " (quoting *Rodriguez v. United States*, 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam))), *cert. denied*, 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). *Cf. Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). *We note, however, that in this case, the similar sections in the I.R.C. and section 523(a)(1)(C) are neither part of the same title, nor the same statute. Nevertheless, omissions or inclusions in the former are relevant to our construction of the latter because Congress is presumed to be aware of pertinent, existing law when it passes legislation. Miles v. Apex Marine Corp.,* 498 U.S. 19, 30, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988).

*Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153, 1156–1157 (11th Cir. 1995) (emphasis added).[14] Did Congress intend for the Internal Revenue Code to amend the Bankruptcy Code even though the dischargeability provision of 11 U.S.C. § 523(a)(1)(A) and the three-year formula of 11 U.S.C. § 507(a)(8)(A)(i) have existed in practically the same unrestricted, unaltered form for almost 30 years? [15]

14. Interestingly in *Haas* the Service argued that the "plain meaning" of section 523(a)(1)(C) of the Bankruptcy Code controlled. The court recognized that the provision was "ambiguous," *Haas*, 48 F.3d at 1156, and consequently consulted legislative history to help in its interpretation.

15. In complete contrast to the absence of modifying language in sections 523(a)(1)(A) and 507(a)(8)(A)(i), Congress specifically included suspension language in other dischargeability provisions. Section 523(a)(8), the student loan exception to discharge, provides that qualifying loans are not dischargeable in bankruptcy if they, "first became due more than 7 years (*exclusive of any applicable suspension of the repayment period*) before the date of the filing of the petition...." 11 U.S.C. § 523(a)(8)(A) (emphasis added). The "applicable suspension" provision of section 523(a)(8)(A) is the language the Service asks this Court to extrapolate from 11 U.S.C. § 108 and 26 U.S.C. § 6503. That language is of course specifically provided for in the student loan dischargeability provision of the Bankruptcy Code. There is no such language in the comparable income tax provision. What happens to be the effect of such language is not something before this Court, but a reading of the opinion of the Court of Appeals for the Eleventh Circuit in *Haas* offers an a possible explanation of the contrast of the student loan and tax provisions. Judge Stanley F. Birch, Jr. wrote, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the dispa-

rate inclusion or exclusion." *Haas*, 48 F.3d at 1156. Congress intentionally acted with regards to the dischargeability of student loans but did not do so as to three year old income taxes.

In another contrasting example of congressional action, Congress provided in 1976 that Health Education Assistance Loans ("HEAL"), "may be released by discharge in bankruptcy ... if such discharge is granted after the expiration of the five-year period beginning on the first date ... when repayment of such loan is required." Public Health Service Act, ch. 373, § 733(g), as added by Health Professions Educational Assistance Act of 1976, Pub.L. No. 94–484, sec. 401(b)(3), 90 Stat. 2243, 2262 (1976) (codified as 42 U.S.C. § 294f(g)). The dischargeability of HEAL loans is governed by title 42 rather than 11 U.S.C. § 523(a)(8). *Nelson v. Pennsylvania Higher Education Assistance Agency (In re Nelson)*, 183 B.R. 972, 976 n. 5 (Bank.S.D.Fla.1995). When the Bankruptcy Code was enacted in 1978, the above section 294f(g) was removed from title 42. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 327, 92 Stat. 2549, 2679 (1978). Congress added subsection (g) back into 42 U.S.C. § 294f in 1981, presumably because title 11 dischargeability provisions were not intended to cover HEAL loans. Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 2730, 95 Stat. 357, 919 (1981). In 1992, Congress omitted all of section 294f, including subsection (g), from the general replacement and revision of title 42 enacted that year but replaced it with a substantially identical provision. Public Health

## C. Tolling of Non-bankruptcy Statutes of Limitations

■ The Bankruptcy Code creates a system of determining whether income taxes will be discharged in bankruptcy. At the heart of that system are the two Bankruptcy Code provisions that allow for the discharge in bankruptcy cases of debts for taxes that are greater than three years old. These are 11 U.S.C. § 523(a)(1)(A) and 11 U.S.C. § 507(a)(8)(A)(i). The Service agrees with this Court that these sections allow for such discharges but contends that 26 U.S.C. § 6503(h), in combination with 11 U.S.C. § 108(c), not only reflects the intent of Congress to toll the running of the three-year time provision of 11 U.S.C. § 507(a)(8)(A)(i), but in effect, also suspends the operation of 11 U.S.C. § 523(a)(1)(A) and the dischargeability of tax debts under that section. The difficulty this Court has in accepting the Service's argument is that while 11 U.S.C.

Services Act, ch. 373, § 707(g), as added by Health Professions Education Extension Amendments of 1992, Pub.L. No. 102–408, sec. 102, 106 Stat. 1992, 2003 (1992) (codified as 42 U.S.C. § 292f(g)). In 1993, Congress amended section 292f(g) of title 42 to extend the nondischargeability period for HEAL loans to seven years and to provide for the suspension of the nondischargeability period. National Institute of Health Revitalization Act of 1993, Pub.L. No. 103–43, § 2014(a)(2)(A), 107 Stat. 122, 215 (1993) (codified as 42 U.S.C. § 292f(g)). Section 292f(g) now provides that qualifying debts, "may be released by discharge in bankruptcy … if such discharge is granted—after the expiration of the seven-year period beginning on the first date when such repayment of such loan is required, *exclusive of any period after such date in which the obligation to pay installments on the loan is suspended.*" 42 U.S.C. § 292f(g) (emphasis added).

The court in *Nelson* discussed the dischargeability of HEAL loans and Congress's action amending the dischargeability statutes applicable to such loans. In *Nelson*, the court explained the significance of the amended law. The law at the time the petition in *Nelson* was filed did not include the suspension language now included in the statute. The court found that the statute in effect at the time the case was filed was the applicable statute. The court rejected the loan agency's argument that the dischargeability period for the loan was tolled and wrote:

Secondly, the Court finds that forbearance agreements *do not toll the running of the period*. The Court notes that if Congress had intended forbearances to toll the time for discharge under § 294f(g), it would have so specified by using the plain language now found in

§ 108(c) and 26 U.S.C. § 6503(h) relate to the assessment and collection of taxes, and in the case of 26 U.S.C. § 6503(h) even relate to the assessment and collection of taxes while an individual has a pending bankruptcy case, these sections, *by definition,* apply only to *non-bankruptcy statutes of limitations* and have no connection to or application on the *three-year dischargeability periods in bankruptcy law.* The provisions of the Bankruptcy Code in 11 U.S.C. § 523(a)(1)(A) and 11 U.S.C. § 507(a)(8)(A)(i) are neither "non-bankruptcy law" nor "statutes of limitations."

### D. *Burns v. United States (In re Burns),* 887 F.2d 1541 (11th Cir.1989)

In *Burns* the Court of Appeals for the Eleventh Circuit held that the meaning of the language from section 523(a)(7)(B) of the Bankruptcy Code was plain. That Code section reads:

§ 292f(g). Thus, as the Barrows Court found [*In re Barrows,* 159 B.R. 86 (Bankr.D.N.H. 1993)], "the forbearance agreements did not toll or otherwise extend the time period set forth in [§ 294f(g)]." See *Barrows,* supra, at 88 n. 2.

*Nelson,* 183 B.R. at 976 (first parenthetical added). Again, if Congress had intended to amend the bankruptcy code to provide for a tolling of the dischargeability section 523(a)(1)(A) debts, it could have done so as it demonstrated with respect to 42 U.S.C. § 292f(g) and 11 U.S.C. § 523(a)(8)(A).

As a final example of how particular Congress can be in *its deliberate actions concerning dischargeability,* this Court repeats:

Section 507(a)(7)(A)(ii) specifically provides that the 240 day period contained therein is suspended while an offer in compromise is pending. Treasury Regulation § 301.7122–1(f) provides that nonbankruptcy limitation periods for assessment and collection of taxes after assessment are also suspended while offers in compromise are pending. Had Congress intended, in the case of successive bankruptcy filings, for the time periods specified in sections 507(a)(7)(A)(i) and 523(a)(7)(B) to be suspended during the pendency of preceding bankruptcy cases, it could have easily made that intention clear, the same way it made the nonbankruptcy tolling provision relating to offers in compromise found in Treas.Reg. § 301.7122–1(f) applicable to the 507(a)(8)(A)(ii) time period.

*Turner v. United States (In re Turner),* 182 B.R. 317, 326 (Bankr.N.D.Ala.1995). The provision in subsection (A)(ii) is quite close to the provision in subsection (A)(i) in both time and space.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> (7) to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
>
>> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>>
>> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7).[16] The court in *Burns* found that the plain meaning of the above language was that, "A tax penalty is discharged if the tax to which it relates is discharged ... or if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition." *Burns*, 887 F.2d at 1544. The court concluded, "We must ... look to the language of section 523(a)(7) itself, and where, as here, that language is plain, we must enforce it according to its terms." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)).

In its opinion the court explained its reason for disregarding the legislative history of section 523(a)(7) in favor of the plain language of the statute. District Judge Howell W. Melton, sitting by designation, wrote:

> Whatever degree of solicitude is due to legislative history materials in the usual case, "[s]trict adherence to the language and structure of the Act is particularly appropriate where, as here, a statute is the result of a series of carefully crafted compromises." *Community for Creative Non-Violence v. Reid*, 490 U.S. [730, 748 n. 14], 109 S.Ct. 2166, 2177 n. 14, 104 L.Ed.2d 811 (1989) (Copyright Act of 1976); see also *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 617, 101 S.Ct. 1945, 1957–58, 68

L.Ed.2d 472 (1981) (Longshoremen's & Harbor Workers' Compensation Act); *United States v. Sisson*, 399 U.S. 267, 291–99, 90 S.Ct. 2117, 2130–34, 26 L.Ed.2d 608 (1970) (Criminal Appeals Act). There can be no doubt that the Bankruptcy Code "was the result of a series of last minute conferences and compromises between the managers of both Houses." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 61 n. 12, 102 S.Ct. 2858, 2866 n. 12, 73 L.Ed.2d 598 (1982) (plurality opinion). Accordingly, the best indicators of congressional intent in this narrow instance are the language and structure of the Code itself, not the accompanying statements of legislators that carry the potential for reclaiming that which was yielded in the actual drafting compromise. "Invocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent." *Board of Governors v. Dimension Fin. Corp.*, 474 U.S. 361, 374, 106 S.Ct. 681, 689, 88 L.Ed.2d 691 (1986).

*Burns*, 887 F.2d at 1545.

A review of the legislative history of the almost identical language of 11 U.S.C. § 507(a)(8)(A)(i) yields the same result. After reviewing that legislative history, and that of the other statutes involved in this controversy, this Court wrote:

> [T]his Court, like the court of appeals in *Burns*, 887 F.2d at 1544–1552, has performed an "even if the plain language of the statute was ambiguous" analysis, and found no language in the legislative history which relates either section 108(c) or section 6503(h) to either section 523(a)(7)(B) or section 507(a)(7)(A), or vice versa, or relates the nonbankruptcy statutes to the dischargeability of taxes and tax penalties, or to the priority of taxes and tax penalties. Neither is there any language in the legislative history of either section 523(a)(7)(B) or section 507(a)(7)(A) which

---

**16.** In the case before this Court, the three-year time period language of section 507(a)(8)(A)(i) replaces the three-year language of section 523(a)(7)(B) examined in *Burns*. Taxes, as opposed to penalties, fall under section 523(a)(1)(A). Penalties fall under section 523(a)(7)(B). The statutory relationship of the tax liabilities to their respective time periods however, in the plain language of the statute, is identical to the relationship examined in *Burns*.

suggests that the respective time periods contained in those statutes should be tolled or suspended for any reason, other than, of course, the reason specifically provided for in section 507(a)(7)(A)(ii). More importantly, had Congress intended, in the case of successive bankruptcy filings, for the time periods specified in sections 507(a)(7)(A) and 523(a)(7)(B) to be suspended during the pendency of preceding bankruptcy cases, it could have easily made that intention clear. "Had Congress wished specifically to set tolling limitations with respect to section 507(a)(7), it could have inserted an appropriate statutory provision into the Bankruptcy Code." *In re Eysenbach*, 170 B.R. at 59. That is exactly what was done in section 507(a)(7)(A)(ii) in relation to offers in compromise. Conspicuous in its absence is any Congressional action in relation to section 507(a)(7)(A)(i).

*Turner v. United States (In re Turner),* 182 B.R. 317, 326 (Bankr.N.D.Ala.1995).[17]

In expressing the Court of Appeals for the Eleventh Circuit's conclusion that the legislative history of section 523(a)(7) should not be considered to alter the plain meaning of the statute, District Judge Melton wrote:

We resolve the question of how to read the legislative history in a simple fashion: by *reading the statute and taking it at face value.* Given the several "mute intermediate legislative maneuvers" through which section 523(a)(7) passed before reaching its present form, we conclude that *congressional intent cannot be divined from extrinsic sources.* The early committee reports do not refer to a comparably worded proposal. The Joint Statement contains inac-

curacies and inconsistencies. It asserts that the current language is an adoption of the Senate amendment's language, see 124 Cong.Rec. 34016, which it is not. Moreover, the two instances in which section 523(a)(7) is mentioned lack consistency, neglecting any reference to subsection (B) in the first instance, *see id.* at 33998, while expanding on the matter later, *see id.* at 34016. Moreover, knowing that the House originally passed a version very different from the Senate, we should not readily assume that the more general language enacted by the two houses possesses the same meaning as the more specific language proposed by the Senate Finance Committee. *Cf. Blessitt [Retirement Plan For Employees of Dixie Engine Co.],* 848 F.2d [1164] at 1178–7988081149 [ (11th Cir. 1988) ] (scope of bills to be reconciled in conference suggests scope of changes that were reasonably contemplated by Congress). "Ambiguous and unclear legislative history may not be used to alter the ordinary meaning of statutory language." *Jones v. MARTA,* 681 F.2d 1376, 1380 n. 10 (11th Cir.1982). Thus, as the Supreme Court has counseled in Dimension Financial and other cases, in light of the compromises and changes, we can effect the will of Congress only by giving effect to the words of the statute.

*Burns v. United States (In re Burns),* 887 F.2d 1541, 1551–1552 (11th Cir.1989).

If *Burns* is not the law in this circuit on the plain meaning of 11 U.S.C. § 523(a)(7), and related statutes, this Court does not have the authority to make such a pronouncement.[18]

---

17. The legislative history quoted in cases supporting a tolling position does not address the threshold questions before this Court. Did Congress intend for a statute that reads, "non-bankruptcy law" to apply to bankruptcy law? Is there any legislative history relating to the tolling of the dischargeability provisions of sections 523 and 507 of the Bankruptcy Code?

18. *See Fortney v. United States (In re Fortney),* 1995 WL 606099 (Bankr.S.D.Ga. Aug. 3, 1995) where the court, agreed with this Court by writing, "The meaning and application of § 523(a)(7) is settled in the Circuit. The 'plain' language of the section means what it says and certain tax penalties may be discharged under either

§ 523(a)(7)(A) or § 523(a)(7)(B)." *Id.* at *3. But for purposes of determining whether the *Burns*'s "transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition," *Burns,* 887 F.2d at 1544, the court in *Fortney* established the point that the "transaction or event giving rise to the penalty" took place as the starting point for determining dischargeability, which starting point the court calculated by tolling the three-year dischargeability periods of sections 507 and 523. The court's tolling method is explained in *Teeslink v. United States (In re Teeslink),* 165 B.R. 708 (Bankr.S.D.Ga.1994).

### E. Quenzer v. United States (In re Quenzer), 19 F.3d 163 (5th Cir.1993)

In *Quenzer*, the Court of Appeals for the Fifth Circuit considered an issue identical to the one before this Court. Writing for the court, Chief Judge Henry A. Politz explained:

> This appeal focuses on the tax deficiencies for 1984 and 1985. In the district court the government successfully relied on the suspension provision in section 108(c) of the Bankruptcy Code as the basis for tolling the priority period for the collection of taxes during the prior bankruptcy proceedings. Under the plain language of section 108(c), however, that suspension applies only to nonbankruptcy law and nonbankruptcy proceedings. Absent some other basis for tolling the section 507 time limit, the Quenzers' tax liability for the years 1984 and 1985 must be discharged.

*Quenzer*, 19 F.3d at 165.[19] In *Quenzer* the Court of Appeals for the Fifth Circuit held that the debtors' 1984 and 1985 income taxes were dischargeable under 11 U.S.C. § 507(a)(8)(A) in a chapter 7 case filed in March 1990, although the debtors had previously been in a chapter 13 case from September 1986 until March 1988.[20]

### F. Haas v. Internal Revenue Service (In re Haas), 48 F.3d 1153 (11th Cir.1995)

In *Haas*, the Court of Appeals for the Eleventh Circuit interpreted the statutory language at issue before this Court. The court found that, "sections 507(a)(8) and 523(a)(1)(A) except from discharge income and employment tax liabilities only for those taxable years ending within three years of the filing of a debtor's bankruptcy petition." *Haas*, 48 F.3d at 1160. The court explained, "Congress imposed this three-year limit on the nondischargeability of income and employment taxes 'because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence.'" *Id.* In making these findings, the court recognized that the Service should not be given an open-ended priority for tax liabilities and that to do so would effectively eliminate the three-year time limit imposed by sections 523(a)(1)(A) and 507(a)(8)(A)(i). Writing for the court, Judge Stanley F. Birch, Jr. explained the context of these findings and conclusions. He wrote:

> The government also argues that Haas's reading of section 523(a)(1)(C) defeats the statute's purpose of preventing the use of the Bankruptcy Code as a tax evasion device. Congress was well aware of the po-

---

**19.** This Court's reliance on *Quenzer* was criticized in *Waugh v. United States (in re Waugh)*, 1995 WL 714457 (D.Minn. Sept. 12, 1995). The court in *Waugh* raised a question about the applicability of *Quenzer* because the court in *Waugh* believed that the court in *Quenzer* did not "consider" section 6503 of the Internal Revenue Code or legislative intent. As quoted above, Chief Judge Politz wrote in *Quenzer*, "Absent some other basis for tolling the section 507 time limit, the Quenzers' tax liability for the years 1984 and 1985 must be discharged." *Quenzer*, 19 F.3d at 165. It is the opinion of the court in *Waugh* that section 6503 supplies this "other basis." As Chief Judge Politz wrote in *Quenzer*, "Under the plain language of section 108(c), however, that suspension applies only to nonbankruptcy law and nonbankruptcy proceedings." *Id.* While section 6503 certainly falls into the category of non-bankruptcy law and non-bankruptcy proceedings, sections 507 and 523 of the Bankruptcy Code do not. *The question is not whether Internal Revenue Code section 6503 applies to bankruptcy matters; the question is whether section 6503 applies to Bankruptcy Code sections 507 and 523.* This Court does not favor making this additional extrapolation and chooses not to link

the bankruptcy law sections to the non-bankruptcy law section 6503 by way of section 108(c). The Court of Appeals for the Fifth Circuit could not have been more clear in rejecting any such link. The court in *Clark v. Internal Revenue Service (In re Clark)*, 184 B.R. 728 (Bankr. N.D.Tex.1995), a court of the Fifth Circuit, agrees with this Court's interpretation. See note 20 below.

**20.** The court in *Clark v. Internal Revenue Service (In re Clark)*, 184 B.R. 728 (Bankr.N.D.Tex.1995), a court of the Fifth Circuit, agrees with this Court that the Court of Appeals of the Fifth Circuit concluded that 11 U.S.C. § 108(c) does not toll the three-year dischargeability periods of sections 523(a)(1)(A) and 507(a)(8)(A)(i). *Id.* at 730. Like this Court, the court in *Clark* considered the debtors' factual circumstances and the equitable issue of a bankruptcy court's authority under 11 U.S.C. § 105. But unlike this Court, the court in *Clark* found that for equitable reasons the Service should be granted additional time with respect to the Clarks' delinquent taxes, a holding supported fully by this Court's position on the applicability of the Internal Revenue Code provisions to the Bankruptcy Code provisions.

tential for tax evasion when it debated the Bankruptcy Reform Act of 1978:

> In business cases ... it is a frequent occurrence that the business will stop paying its taxes before it stops paying its other creditors, because the officers of the business know that detection of nonpayment is more difficult for the taxing authority than it is for a supplier or lender, and that an unpaid supplier quickly stops shipping goods, though an unpaid taxing authority is usually unable to take collection action for months.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 193 (1977), reprinted in 1978 U.S.C.C.A.N., 5787, 6153–54. However, the provision Congress drafted to prevent this form of tax evasion was not section 523(a)(1)(C) but sections 523(a)(1)(A) and 507(a)(8). *See,* H.R.Rep. No. 595 at 190 & nn. 97, 98, 1978 U.S.C.C.A.N., at 6151 nn. 97, 98. Explaining the policy behind these provisions, Congress noted that:

> [b]ecause it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before bankruptcy. An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.

*Id.* at 190, 1978 U.S.C.C.A.N., at 6150 (footnote omitted) (emphasis added). Congress enacted section 523(a)(1)(A) and section 507(a)(8) to give taxing authorities time to pursue delinquent income tax debtors and to obtain secured status before the debtor can discharge his tax liability in bankruptcy. *See id.*

Congress did not intend to grant the IRS an absolute priority in bankruptcy for delinquent taxes, however. Instead, sections 507(a)(8) and 523(a)(1)(A) except from discharge income and employment tax liabilities only for those taxable years

ending within three years of the filing of a debtor's bankruptcy petition. See §§ 507(a)(8), 523(a)(1)(A). *Congress imposed this three-year limit on the nondischargeability of income and employment taxes "because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence."* H.R.Rep. No. 595, at 191, 1978 U.S.C.C.A.N., at 6151. *The government's interpretation of section 523(a)(1)(C) effectively would eliminate the three-year time limit imposed by sections 523(a)(1)(A) and 507(a)(8)(A) and would give the IRS an open-ended priority for tax liabilities regardless of that agency's "lack of due diligence" in collecting properly reported tax liabilities.* Thus, the government correctly notes that Congress intended to prevent businesses from paying their other creditors ahead of the IRS. The government is mistaken, however, when it seeks to remedy this situation by excepting from discharge the whole of Haas's tax liability, per section 523(a)(1)(C), rather than only that portion of Haas's tax debt attributable to the three taxable years preceding his bankruptcy petition, per section 523(a)(1)(A).

*Haas,* 48 F.3d at 1159–1160 (emphasis added) (footnote omitted).

▮ The Service argues that 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(h) provide the Service with a full three-year allotment of time in which to collect a debtor's past due taxes.[21] Like its interpretation of section 523(a)(1)(C) in *Haas,* the Service's present interpretation would, where a debtor has filed a previous bankruptcy petition, "effectively ... eliminate the three-year time limit imposed by sections 523(a)(1)(A) and 507(a)(8)(A)...." *Id.* Congress imposed this three-year limit on the nondischargeability of income and employment taxes "because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence." *Id.*

---

21. See note 2 above. As explained there the Service argues that none of its three-year allotment is consumed while a debtor remains under the protection of the Bankruptcy Code. The Service argues also that not only is none of its allotment consumed during bankruptcy periods but that pursuant to 26 U.S.C. § 6503(h)(2) the allotment is not consumed for an additional six months for each bankruptcy case filed by the same debtor.

The Court of Appeals for the Eleventh Circuit's interpretation of sections 523(a)(1)(A) and 507(a)(8)(A)(i) is opposite that of the Service. The three-year limit in sections 523(a)(1)(A) and 507(a)(8)(A)(i) is a time limit on the collection of taxes, not an extension of time to collect taxes.

If *Haas* is not the law in this circuit on the plain meaning of the three-year time period imposed by section 523(a)(1)(A) and section 508(a)(8)(A)(i), this Court does not have the authority to make such a pronouncement.

### G. Conclusion of Reconsideration

*Burns* explains that the tax related sections of the Bankruptcy Code are to be interpreted according to those sections' plain meanings. *Quenzer* explains that the non-bankruptcy provisions of the Internal Revenue Code do not apply to the tax dischargeability sections of the Bankruptcy Code. *Haas* explains that only income and employment tax liabilities for the taxable years ending within three years of the filing of a debtor's bankruptcy petition are to be excepted from a debtor's discharge and that the reason for such a restriction is that the Service should not be given an open ended priority for such taxes. For the reasons expressed above and the ones explained in this Court's earlier opinion, the Court finds that the memorandum opinion and order entered in *Turner v. United States (In re Turner)*, 182 B.R. 317 (Bankr.N.D.Ala.1995) should not be modified.

### III. Equitable Issues

What seems to trouble the Service and the many courts that disagree with this Court is that if the three-year dischargeability period is not interrupted during a debtor's chapter 13 bankruptcy case, presumably while the Service is prohibited from collecting taxes, an unscrupulous debtor will use successive bankruptcy filings to fend off the Service until the three-year period is complete, then file a final chapter 7 bankruptcy case and ask a court to allow the discharge of the now more than three year old taxes. The court in *In re DiCamillo*, 186 B.R. 59 (Bankr.E.D.Pa. 1995) succinctly explained the fears of those who do not share this Court's opinion. The court wrote, "a unique scheme of tax avoidance *would be available* to Chapter 13 debtors who could stop IRS collection efforts by filing a bankruptcy petition, wait for § 507(a)(8)(A)'s priority period to expire, dismiss the case shortly thereafter and then refile." *DiCamillo*, 186 B.R. at 62 (emphasis added).[22] For the reasons expressed below, this Court finds that this debtor is not one who utilized such a scheme.[23]

### A. Facts

The facts in this case are undisputed. After the initial stage of this litigation this Court wrote:

> Much of the above discussion addresses the theoretical basis for the IRS's position in this case. More importantly however is

**22.** As quoted by the Court of Appeals for the Eleventh Circuit in *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994), from the Court of Appeals for the First Circuit case of *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987), "the reasons for denying a discharge ... must be real and substantial, *not merely technical and conjectural.*" *Id.* (emphasis added). To make such a determination this Court must consider present facts not future possibilities. As the Court of Appeals for the Fifth Circuit explained in *Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993):

> Equitable considerations are largely fact-driven. "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." *Full development and examination of the facts and the relative positions of the parties are imperative in the exercise of the court's equitable powers.* Necessarily, "[i]n shaping equity decrees the trial court is vested with broad discretionary power; appel-

late review is correspondingly narrow." Determining equities in the first instance is seldom fit grist for the appellate mill. *Id.* at 165 (citations and footnotes omitted) (emphasis added).

**23.** Faith in the Bankruptcy Code, the bankruptcy system and the individuals working in that system is essential. Few situations will exist where chapter 13 trustees, chapter 7 trustees, United States Bankruptcy Administrators, United States Trustees, and especially the agents of the Internal Revenue Service, will sit by idly and allow such an occurrence. But if the majority position is adopted, whether a particular debtor has or has not participated in such a scheme would never be an issue for a court to decide. By adopting a "tolling" position, a court would never have an opportunity to consider whether a debtor filed a petition, waited for the three-year period to run, dismissed the case and then refiled another one.

how the specific facts of this case relate to that position. To erase any question that this case was decided on theory and not facts, in the absence of a presentation of any additional facts as discussed above, this Court finds the following:

The Debtor's first Chapter 7 case which lasted only 92 days can barely be considered a de minimus hindrance to the IRS's efforts to collect the 1986 taxes. There is no indication that the Debtor owns nonexempt, unencumbered property that can be levied upon by the IRS or owned nonexempt, unencumbered property at any time between the date the assessment of the 1986 taxes was made and the filing of the present Chapter 7 case. In fact, the Debtor's present Chapter 7 is a "no asset" case, as was the Chapter 7 case that was filed by the Debtor in 1988. The IRS can scarcely argue that it was hindered from collecting the taxes by the Chapter 13 case filed in 1990. Most of the sum that has been paid by the Debtor ($6,739 out of a total of $7,969) to the IRS was paid through the plan in that case.

The IRS has had ample time and opportunity to collect much of the taxes from any nonexempt, unencumbered property owned by the Debtor at the time of or acquired by the Debtor following the respective tax assessments, and from any wages earned by the Debtor following the respective tax assessments and prior to the institution of the present Chapter 7 case. The return for the Debtor's 1986 taxes became due on April 15, 1987 and the taxes were assessed on June 1, 1987. The present bankruptcy case was filed 2,566 days after the return due date and 2,520 days after assessment of the taxes. The Debtor's intervening bankruptcy cases endured for a total of 1,238 days. The IRS was free to assess and collect the 1986 taxes for 1,328 days after the due date of the 1986 return and to collect the taxes for 1,282 days after assessment of the taxes.

The return for the Debtor's 1987 taxes became due on April 15, 1988 and the taxes were assessed on May 16, 1988. The present bankruptcy case was filed 2,201 days after the return due date and 2,171 days after assessment of the taxes. The Debt-

or's intervening bankruptcy cases endured for a total of 1,146 days. The IRS was free to assess and collect the 1987 taxes for 1,055 days after the due date of the 1987 return and to collect the taxes for 1,025 days after the assessment of the taxes.

The return for the Debtor's 1988 taxes became due on April 15, 1989 and the taxes were assessed on June 5, 1989. The present bankruptcy case was filed 1,836 days after the return due date and 1,786 days after assessment of the taxes. The Debtor's intervening bankruptcy cases endured for a total of 1,146 days. The IRS was free to assess and collect the 1988 taxes for 690 days after the due date of the 1988 return and to collect the taxes for 640 days after the assessment of the taxes.

The return for the Debtor's 1989 taxes became due on April 15, 1990. The present bankruptcy case was filed 1,471 days after the return due date and 1,429 days after assessment of the taxes. The Debtor's intervening bankruptcy cases endured for a total of 1,128 days. The IRS was free to collect the 1989 taxes for 343 days after the due date of the 1989 return and the assessment of the taxes.

The IRS did not act during the time that the Debtor was not in bankruptcy. As a consequence of their failure to act, the IRS allowed the time periods provided for under sections 507(a)(7)(A) and 523(a)(7)(B) to pass, and did not pursue the collection of the taxes under the Internal Revenue Code during the time that the debtor was not in bankruptcy. The IRS should not now be allowed to complain that the time has passed and that it should have more time to collect the taxes.

The taxes owed by the Debtor to the IRS are for taxable years for which returns were last due after three years before the date the petition in this case was filed, and were assessed more than 240 days before the date the petition in this case was filed. The taxes are therefore not exempt from discharge under 11 U.S.C. § 727. *Turner*, 182 B.R. at 339–340 (heading omitted). Those facts were not materially supplemented for the instant stage of this litigation. The parties

agree that all facts this Court should consider in determining all equitable issues are before the Court.[24]

## B. Conclusions of Law

■ To decide whether there is an equitable reason the Internal Revenue Service should be allowed additional time to collect income taxes which were due more than three years before the filing of the debtor's chapter 7 bankruptcy petition, this Court must determine whether, during the three-year dischargeability periods applicable to income tax liabilities, the debtor intentionally acted to cause the Internal Revenue Service delay in its efforts to assess or collect past due taxes. To make that determination this Court has considered: (1) whether the debtor's four bankruptcy petitions were filed in good faith; (2) whether the Service's failure to collect taxes, during the times the debtor did not have a pending bankruptcy case, contributed to the Service's failure to collect the taxes within the time allowed by the Bankruptcy Code; and, (3) whether the debtor's right to discharge the debts outweighs the Service's right to collect the taxes.

### 1. Good Faith

The Bankruptcy Code despises the fraudulent debtor, the deceiving debtor, the evasive debtor. And in protecting the bankruptcy system and bankruptcy creditors, the Bankruptcy Code provides courts with the mechanisms of identifying, confronting and disciplining those debtors. Those mechanisms must then be applied to the facts of each case. In the instant matter, the Court has

considered the facts before it in addressing the equitable issues of this case. These facts include the filing and disposition dates of the debtor's prior bankruptcy cases which may be summarized as:

1st—Chapter 7 filed January 5, 1988; Discharge entered April 5, 1988.

2nd—Chapter 13 filed March 28, 1990; Dismissed November 16, 1992.

3rd—Chapter 13 filed November 20, 1992; Dismissed May 19, 1993.

4th—Chapter 7 filed April 25, 1994; Pending.

A consideration of the above is crucial to a determination in this case.[25]

### (a) Burden of Proof

■ Because this debtor proved that the taxes due the Service are dischargeable, if equity stands at the government's side as the Service contends, the Service must prove that this debtor is one of those who should be subject to the disciplinary provisions of the Bankruptcy Code.[26] In its previous opinion this Court wrote:

[I]n regards to the taxes (but not the tax penalties), equity may be invoked by this Court to avoid any injustice which may have resulted to the IRS as a result of any dilatory or bad faith conduct on the Debtors' part in filing or prosecuting their previous Chapter 13 case, or as a result of failure of the safeguards built into the Bankruptcy Code to reasonably protect the ability of the IRS to collect taxes in the manner and extent provided for therein. While the facts which have been stipulated to by the parties and which the Court is

---

24. As explained earlier, the Service asked the Court to consider, and the Court has before it and has considered the information in, the case files from the debtor's three prior bankruptcy cases.

25. See note 8 above. These facts are evident from the debtor's prior proceedings. The Court takes judicial notice under Fed.R.Evid. 201 of those prior bankruptcy filings. The case files from those cases include information from the chapter 13 standing trustee's office and information created by the clerk of court. The Court has considered that information. The Court of course does not take judicial notice of the truth of all facts in the prior case files, although the facts of this matter are not in dispute.

26. The burden of proof in a section 523(a)(1)(A) dischargeability matter is of course on the debtor. The debtor here not only met that burden but also proved that the subject taxes were dischargeable; consequently, the burden must now shift to the Service to prove that it is entitled to equitable relief. The court in *Clark v. Internal Revenue Service (In re Clark)*, 184 B.R. 728 (Bankr.N.D.Tex.1995) agrees. "Defendant [Internal Revenue Service] had the burden of proof factually to show that § 105(a), if available, should be applied to make its claims priority." *Id.* at 730 (quoting *Quenzer*, 19 F.3d at 165).

able to glean from the record in this case and the arguments of counsel do not indicate, on their face, a situation appropriate for the application of equity, this Court is of the opinion that the IRS should have the opportunity to prove facts that might lead to a different conclusion, if it so desires. . . .

*Turner v. United States (In re Turner)*, 182 B.R. 317, 340 (Bankr.N.D.Ala.1995).

### (b) Chapter 13 Case Factors

■ Section 1307(c) of the Bankruptcy Code allows a bankruptcy court to convert or dismiss a chapter 13 case for "cause." 11 U.S.C. § 1307(c). Section 1307(c) includes a list of items that are considered "cause." The one pertinent to the instant case, for purpose of investigating abuse by a debtor, is "denial of confirmation of a plan under section 1325. . . ." 11 U.S.C. § 1307(c)(5). Subsection (a)(3) of section 1325(a)(3) requires that a debtor's, "plan has been proposed in good faith. . . ."[27] 11 U.S.C. § 1325(a)(3).

In *In re Kitchens*, 702 F.2d 885 (11th Cir.1983) the Court of Appeals for the Eleventh Circuit listed the appropriate factors for a bankruptcy court to consider in attempting to determine whether a debtor's chapter 13 plan has been proposed in good faith.[28] This Court has considered those factors and finds that the Debtor's two chapter 13 plans were proposed in good faith and that by filing those cases and proposing the plans, the debtor did not abuse the bankruptcy system.[29]

### (c) Chapter 7 Case Factors

■ A bankruptcy court may dismiss a chapter 7 case for "cause" which includes: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) non-payment of fees and charges; (3) failure of a debtor to file necessary documents; or, (4) where there is substantial abuse of certain provisions of the Bankruptcy Code. 11 U.S.C. § 707.[30] In considering the first three, if the facts of a particular case do not fit within one of those specific factors, as is the situation in the instant case, many courts will consider whether a case has been filed in good faith.[31]

27. A detailed analysis of the other factors in 11 U.S.C. § 1307(c) would not be helpful in this case. Because the debtor did not complete the confirmed chapter 13 reorganization plans of his prior cases, 11 U.S.C. § 1307(c)(6) is applicable as there was a "material default by the debtor with respect to a term of a confirmed plan. . . ." The issues that would be involved in a retrospective analysis of that factor are however, similar to the substantive issue now before this Court in relation to the debtor's chapter 7 cases.

28. Those factors include:
(1) the amount of the debtor's income from all sources;
(2) the living expenses of the debtor and his dependents;
(3) the amount of attorney's fee;
(4) the probable or expected duration of the debtor's Chapter 13 plan;
(5) the motivations of the debtor and his sincerity if seeking relief under the provisions of Chapter 13;
(6) the debtor's degree of effort;
(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
(8) special circumstances such as inordinate medical expense;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors (the extent to which claims are modified and the extent of preferential treatment among classes of creditors);
(11) the burden which the plan's administration would place on the trustee;
(12) substantiality of the repayment to the unsecured creditors;
(13) consideration of the type of debt to be discharged and whether such debt would be nondischargeable;
(14) the accuracy of the plan's debts and expenses and whether any inaccuracies are an attempt to mislead the court.
*Kitchens*, 702 F.2d at 888–889.

29. The debtor's plan of reorganization in case no. 90–03657–WEJ–13 was confirmed by the court on July 11, 1990. The debtors' plan of reorganization in case no. 92–08814–TOM–13 was confirmed by the court on February 1, 1993. The debtor's other prior case was a Chapter 7 case.

30. These factors are illustrative, not exhaustive. *See e.g.*, *In re Griggs*, 679 F.2d 855, 856 (11th Cir.1982); *In re Davidoff*, 185 B.R. 631, 634 (Bankr.S.D.Fla.1995); *In re Ripley & Hill, P.A.*, 176 B.R. 596, 598 (Bankr.M.D.Fla.1994).

31. In cases where debts are primarily consumer debts, courts may consider whether the case should be dismissed for substantial abuse of certain provisions of the Bankruptcy Code. 11

The court in *In re Ripley & Hill, P.A.*, 176 B.R. 596 (Bankr.M.D.Fla.1994) appropriately described how such a consideration should balance the equities of each case. The court explained:

> In deciding whether to dismiss a case because of bad faith, courts are guided by equitable principles and should balance the benefit and harm to creditors and the debtor. *In re Atlas Supply Corp.*, 857 F.2d 1061 (5th Cir.1988). In chapter 7 cases courts also seek to protect the debtor's fresh start and to facilitate the fair and orderly distribution of assets. *In re Campbell*, 124 B.R. 462 [ (Bankr.W.D.Pa.) ]; *In re Grieshop*, 63 B.R. 657 (N.D.Ind.1986). Each case must, of course, rise or fall on its own facts and an assessment of the totality of the circumstances.

*Id.* at 598.

The court in *In re Davidoff*, 185 B.R. 631 (Bankr.S.D.Fla.1995) provided a detailed explanation of the factors some courts have considered in attempting to determine good faith. Along with that explanation the court summarized an Arkansas tax liability case that illustrates the significant difference between the instant case and one where there is an abuse of bankruptcy privileges. The court wrote:

> A determination of good faith requires an inquiry into any possible abuses of the provisions, purposes or spirit of the bankruptcy law and whether the debtor genuinely needs the liberal protections afforded

by the Bankruptcy Code. *In re Campbell, supra,* citing *In re Setzer,* 47 B.R. 340, 345 (Bankr.E.D.N.Y.1985).

In *In re Cappuccetti,* 172 B.R. 37 ( [Bankr.] E.D.Ark.1994) the court set forth the numerous factors courts utilize to determine whether a Chapter 7 case was filed in bad faith, including: (1) the debtor filed the case in response to a judgment, pending litigation, or collection action; (2) there is an intent to avoid a large, single debt; (3) the debtor has sufficient resources to pay his debts; (4) the debtor is paying debts of insiders; (5) the schedules inflate expenses to disguise financial well-being; (6) the debtor transferred assets; (7) the debtor failed to make candid and full disclosure; (8) the debtor's debts are modest in relation to his assets and income; (9) there are multiple bankruptcy filings or other procedural "gymnastics;" (10) the debtor made no life-style adjustments or continued living an expansive or lavish lifestyle; (11) the unfairness of the use of Chapter 7.

In *Cappuccetti,* the IRS was the debtors' major creditor, and the only debt sought to be discharged was the tax liability owed to the IRS. The court determined that debtors' petition was not filed in good faith in that: the Chapter 7 petition appeared to be filed in response to collection activities by the IRS, the debtors enjoyed a fairly luxurious lifestyle and had made no attempt in the months prior to the filing to reduce their expenses, debtors transferred

---

U.S.C. § 707(b). In deciding whether relief under a chapter 7 case should be granted, a court may consider whether to do so would be a substantial abuse of bankruptcy laws. In making this determination, many courts in this circuit have recognized a "totality of the circumstances" approach. *In re Gentri*, 185 B.R. 368, 373 (Bankr.M.D.Fla.1995); *In re Blair*, 180 B.R. 656, 658 (Bankr.N.D.Ala.1995); *In re Rogers*, 168 B.R. 806, 808 (Bankr.M.D.Ga.1993); *In re Woodhall*, 104 B.R. 544, 546 n. 2 (Bankr.M.D.Ga. 1989). Those courts adopted the factors listed in *In re Green*, 934 F.2d 568, 572 (4th Cir.1991) or *In re Woodhall*, where *Woodhall* recognized factors expressed in *In re Strong*, 84 B.R. 541 (Bankr.N.D.Ind.1988) and *In re Kress*, 57 B.R. 874 (Bankr.D.N.D.1985). The *Green* factors are:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
3. Whether the debtor's proposed family budget is excessive or unreasonable;
4. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
5. Whether the petition was filed in good faith.

*Green,* 934 F.2d at 572.

This Court has considered those factors in relation to this debtor's two chapter 7 cases and finds, without analyzing whether the debts in each case were primarily consumer debts, that neither of the Debtor's Chapter 7 cases, the current one or the 1988 one, substantially abuses the bankruptcy system.

a valuable piece of real estate to their daughter and paid her car loan every month. The court also believed that debtors had the ability to pay their debts. "Indeed, the debtors have paid or reaffirmed their debts with the sole exception of the IRS." The Court also noted that debtors had additional resources excluded from the calculation of their assets and income from a corporation in which Mr. Cappuccetti was the sole owner and employee. *Id.* at 634–635. The possibility that debtors will file bankruptcy petitions in bad faith is a real possibility this Court of equity must consider, but it is a possibility that must be considered on a case by case basis. Generalities should not be applied.

There is no evidence in this case that the debtor committed any of the wrongs described above, or committed any that would require this Court to reach a conclusion that the prior cases were filed in bad faith; consequently, this Court finds as a matter of fact, and concludes as a matter of law, that the debtor's chapter 13 and chapter 7 cases were filed in good faith, that the plans proposed in the chapter 13 cases were proposed in good faith and that the chapter 7 cases did not substantially abuse the bankruptcy system.

### 2. The Service's Failure to Act

■ The Service argues that Congress, through the three-year period of section 507(a)(8)(A)(i), granted the Service a three-year allotment of time to collect taxes before those taxes would lose priority status. In support of that argument the Service relies on a portion of the legislative history quoted above, specifically that which reads, "An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due." H.R.Rep. No. 595, 95th Cong., 1st Sess. 190 (1977), reprinted in 1978 U.S.C.C.A.N., 5963, 6150. But as explained above, the Court of Appeals for the Eleventh Circuit rejected that argument in *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995) and as that case seems to suggest, the three-year period of section 507(a)(8)(A)(i), as applied in section 523(a)(1)(A), is a strictly limited period given

to the government to collect taxes and is not be considered an accumulative amount of time for the Service to spend freely so long as it acts within that cumulative time total.

As quoted above, the Court of Appeals for the Eleventh Circuit recognized that the three-year period of section 507(a)(8)(A)(i) is not unlimited and was imposed on the government to prevent an open-ended priority due to a lack of diligence. Writing for the court, Judge Stanley F. Birch, Jr., explained:

Congress did not intend to grant the IRS an absolute priority in bankruptcy for delinquent taxes, however. Instead, sections 507(a)(8) and 523(a)(1)(A) except from discharge income and employment tax liabilities only for those taxable years ending within three years of the filing of a debtor's bankruptcy petition. See §§ 507(a)(8), 523(a)(1)(A). *Congress imposed this three-year limit on the nondischargeability of income and employment taxes "because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence."* H.R.Rep. No. 595, at 191, 1978 U.S.C.C.A.N., at 6151. *The government's interpretation of section 523(a)(1)(C) effectively would eliminate the three-year time limit imposed by sections 523(a)(1)(A) and 507(a)(8)(A) and would give the IRS an open-ended priority for tax liabilities regardless of that agency's "lack of due diligence" in collecting properly reported tax liabilities.*

*Haas*, 48 F.3d at 1160 (emphasis added) (footnote omitted).

■ As the facts of the instant case demonstrate, the government had more than adequate time to collect each of the debtor's four years of past due taxes during the collection windows afforded the Service for each of the debtor's four tax years. The debtor did not file his final chapter 7 case until April 25, 1994, the date triggering the three-year dischargeability provision of section 523 and section 507. And because the debtor was not continually in bankruptcy from April 15, 1987, the date the first of the past due taxes became due, until April 25, 1994, the Service had 1,328 days to collect the 1986 taxes, 1,055 days to collect the 1987 taxes, 690 days to collect the 1988 taxes and 343 days to collect the 1989 taxes. As is clearly evident from

the records before this Court, at a minimum, the Service had 11 months between the date of dismissal of the debtors' last chapter 13 case and the date of the filing of the instant case.[32] Consequently, this Court finds as a matter of fact, and concludes as a matter of law, that the Service's "lack of due diligence" contributed to its failure to collect the debtor's past due taxes in the three years allowed by the Bankruptcy Code.[33]

### 3. The Debtor's Right to Discharge Debts

■ Dischargeability of debts is the essence of bankruptcy. The freshstart policy of the Bankruptcy Code assures that relief. Judge Phyllis A. Kravitch, writing for the Court of Appeals for the Eleventh Circuit in *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir.1994), explained:

> [C]ourts generally construe the statutory exceptions to discharge in bankruptcy "liberally in favor of the debtor," and recognize that " '[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' " *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987) (quoting *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934)); *see also Boyle v. Abi-*

**32.** The debtor's first chapter 7 case had no effect on the dischargeability of the taxes in question in this case as none of those taxes were due and owing more than three years before that case was filed on January 5, 1988. The debtor's 1986 taxes, due on April 15, 1987; his 1987 taxes, due on April 15, 1988; and his 1988 taxes, due on April 15, 1989, were due three years, two years and one year before the debtor filed his first chapter 13 case on March 28, 1990. The Service did not collect those taxes during those three, two and one-year periods or during the 11 months prior to the filing of the present case. As the time calculations made in *Turner* at 339–340 and reproduced above demonstrate, the Service had 1,328 days to collect the debtor's 1986 taxes, 1,055 days to collect the debtor's 1987 taxes and 690 days to collect the debtor's 1988 taxes, but did not.

The debtor's 1989 taxes became due on April 15, 1990 after the debtor filed his second bankruptcy case (first chapter 13 case) on March 28, 1990. The three-year dischargeability period for those taxes expired on April 15, 1993 prior to the dismissal of the debtor's third bankruptcy case (second chapter 13 case) on May 19, 1993. Because only four days separated the second case from the third, as a practical matter, the three-year dischargeability began and expired during the debtor's two chapter 13 bankruptcy cases. The expiration of the period did not however, make the 1989 taxes dischargeable. The Service still had 343 days to collect these taxes as the taxes became dischargeable only when the debtor filed his chapter 7 bankruptcy petition on April 24, 1994, some 11 months after the third case was dismissed. (Because of this 11 month period, the issue of the dischargeability of taxes where the three-year dischargeability period began and ended during a chapter 13 bankruptcy case, and the case was converted to a chapter 7 case, or a chapter 7 case was filed immediately after the chapter 13 case ended, is not before this Court.)

Had the Service taken any action towards the collection of the past due taxes during the time available for collection, the Service's equitable arguments would have been stronger; however, because of the Service's lack of effort and the fact that the debtor paid, during the 32 months of his 1990 chapter 13 case, $6739.00 towards his tax liability, the equitable scales weigh in favor of the debtor. This situation is clearly one encompassed in the Court of Appeals for the Eleventh Circuit's pronouncement in *Haas* that "Congress imposed this three-year limit on the nondischargeability of income and employment taxes 'because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence.' " *Haas* at 1160.

**33.** According to many courts, the Service is not without remedies. Those recognized remedies include: A chapter 7 debtor should not be granted a dismissal of a pending chapter 7 case, where the stated reason for the motion to dismiss was to allow the debtor to refile the case after the dischargeability period had run as to income tax liabilities. *Leach v. United States (In re Leach)*, 130 B.R. 855 (9th Cir. BAP 1991); Priority tax claims are not discharged in a chapter 13 case until paid in full. *In re DiCamillo*, 186 B.R. 59, 61 n. 4 (Bankr.E.D.Pa.1995); A debtor may not avoid a properly perfected tax lien against a homestead exemption. *Walkup v. First Interstate (In re Walkup)*, 183 B.R. 884, 887, 889 (Bankr. E.D.Cal.1995); Even when an underlying obligation is discharged, a tax lien against exempt property survives a bankruptcy. *Id.* A bankruptcy discharge does not automatically invalidate liens securing dischargeable tax debts, the discharge relieves the debtor only of personal liability. *Doerge v. United States (In re Doerge)*, 181 B.R. 358, 365 n. 11 (Bankr.S.D.Ill.1995); If taxes have not been assessed they are not dischargeable; if taxes have been assessed, the Service has a lien on unencumbered property. *Turner v. United States (In re Turner)*, 182 B.R. 317, 332–333 (Bankr.N.D.Ala.1995). The Service's rights in assets owned by a debtor when bankruptcy is filed, are preserved by the lien and cannot be effectively assailed, even if a debtor files a chapter 7 bankruptcy and the taxes are ultimately discharged. *Id.*

*lene Lumber, Inc. (Matter of Boyle)*, 819 F.2d 583, 588 (5th Cir.1987). This narrow construction ensures that the "honest but unfortunate debtor" is afforded a fresh start. *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985); *see also Caspers v. Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987) ("[E]vidence presented must be viewed consistent with congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code."). We confine our analysis in this case to the district court's reversal of the bankruptcy court's finding that the fourth element under 11 U.S.C. § 523(a)(2)(B), "intent to deceive," was not met.

*Id.* at 304.

In *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995) the court considered "whether a debtor's failure to pay his taxes, without more, constitutes a 'willful[ ] attempt[ ] in any manner to evade or defeat such tax' under section 523(a)(1)(C)." *Id.* at 1155. The Service argued that a knowing failure to pay taxes was tax evasion under the plain meaning of section 523(a)(1)(C). In rejecting the Service's argument the court addressed the importance of a debtor's discharge. Judge Stanley F. Birch, Jr., wrote:

> Such an expansive reading of section 523(a)(1)(C)'s exception to discharge would contravene the Bankruptcy Code's purpose of allowing a fresh start for the honest but unfortunate debtor. See *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *In re Miller*, 39 F.3d 301, 304 (11th Cir.1994). Under the IRS's interpretation of section 523(a)(1)(C), the only honest debtor would be a debtor who is wholly unaware of her debt to the IRS. However, she also is an honest debtor who, fully cognizant of the debt that she

owes to the IRS, uses her income to pay other debts instead. Her failure to pay the IRS is the result of not dishonesty but of the defining characteristic of all debtors—honest and dishonest, alike—insufficient resources to honor all of her obligations. Similarly, Haas technically had the financial ability to pay his taxes, but he still lacked the resources to pay all of his debts. That he decided to use his limited funds to satisfy obligations other than his properly acknowledged income taxes does not render him a dishonest debtor, simply a debtor. A literal application of the government's "plain language" interpretation of section 523(a)(1)(C) would thus render the general rule of dischargeability of tax liabilities an empty letter and defeat the central purpose of the Bankruptcy Code. Consequently, we must look to other sources to guide our interpretation of the ambiguous provision.

*Haas*, 48 F.3d at 1156 (emphasis added) (footnote omitted).³⁴

Is the prerogative of the Service to collect past due taxes so significant that in direct competition with a debtor's right to a discharge and a freshstart, that this Court should, as a general rule, choose collection over discharge because to do so would, as some courts contend, "frustrate" the scheme for the payment of tax claims? In *Meltzer v. C. Buck LeCraw & Co.*, 402 U.S. 936, 91 S.Ct. 1624, 29 L.Ed.2d 105 (1971), Justice Hugo L. Black wrote, "Society provides welfare to ensure the survival of the unfortunate. And bankruptcy is designed to permit a man to make a new start unhampered by overwhelming debts in hopes of achieving a useful life." *Id.* at 958, 91 S.Ct. at 1626.³⁵

The debtor before this court, "lacked the resources to pay all of his debts." There is no evidence to demonstrate that this debtor attempted to manipulate the bankruptcy system, or committed any other act that requires this Court to limit the dis-

---

**34.** The appeals court did not accept the Service's argument that the meaning of the language of section 523(a)(1)(C) was plain. The court, as reflected in the above quote, recognized the section as ambiguous and only then did the court consult legislative history. The ambiguity in the section is apparently caused by the congressional

use of the phrase "willfully attempted." 11 U.S.C. § 523(a)(1)(C).

**35.** In contravention of a debtor's fresh start the Bankruptcy Code already allows the Service significant advantages. See note 32 above.

chargeability of debts. And aside from the fact that Congress provided for an elaborate system in the Bankruptcy Code for tax collection and dischargeability, Congress continues to allow for the discharge of taxes which are greater than three years old. As Judge Birch wrote in *Haas,* "Where Congress knows how to say something but chooses not to, its silence is controlling." *Haas,* 48 F.3d at 1156. If Congress intended that taxes that were greater than three years old were not to be discharged in a bankruptcy case, Congress should have so provided.[36] Whether this Court or any other believes that the law as written is wrong, unless the law creates an irreconcilable conflict between the rights of the individual and the consequences of the act, this Court should not intrude.[37]

This Court finds as a matter of fact, and concludes as a matter of law, that the debtor has not abused the bankruptcy system, has not mislead the Service, has not committed a fraud on this Court or the Service and that the discharge of past due taxes far outweighs the Service's right to collect those taxes.[38]

### C. Conclusion of Equitable Issues

 There is no evidence that this debtor filed a chapter 13 case, waited until the three-year period expired and then filed a chapter 7 case to discharge those taxes. The contrary evidence is that the debtor attempted to pay his taxes through his chapter 13 cases. The debtor filed the instant chapter 7

case 11 months after his last chapter 13 case was dismissed. Because this debtor, "decided to use his limited funds to satisfy obligations other than his properly acknowledged income taxes does not render him a dishonest debtor, simply a debtor." *Haas,* 48 F.3d at 1156. The debtor's filing of a subsequent chapter 7 petition that asks for a discharge of the unpaid taxes certainly cannot alter that conclusion.

For the reasons expressed above and the ones explained in this Court's earlier opinion, the Court finds that the equitable issues before this Court should be decided in favor of the debtor and against the Internal Revenue Service. This Court further finds that the debtor did not, during the three-year dischargeability period applicable to tax liabilities, act intentionally to cause the Internal Revenue Service delay in its efforts to assess or collect past due taxes.

### IV. Conclusion

If this Court is to accept that the Service is absolutely entitled, as a matter of law, to additional time for collecting taxes in *all* cases where debtors have filed previous bankruptcy petitions involving past due taxes, then this Court must accept that in *all* such cases that the debtors are attempting to manipulate the system. To do so, without giving those debtors the opportunities to plead their cases before this Court, is profound.[39] Surely Congress did not intend for

---

**36.** See note 15 above.

**37.** In 1803 Chief Justice John Marshall wrote, "The question, whether an act, repugnant to the constitution, can become the law of the land, is a question deeply interesting to the United States; but, happily, not of an intricacy proportioned to its interest. It seems only necessary to recognize certain principles, supposed to have been long and well established, to decide it." *Marbury v. Madison,* 5 U.S. (1 Cranch.) 137, 176 (1803). Prior to the *Marbury* decision, Alexander Hamilton offered:

The interpretation of the laws is the proper and peculiar province of the courts. A Constitution, is, in fact, and must be regarded by the judges, as a fundamental law. It therefore belongs to them, to ascertain its meaning, as well as the meaning of any particular act proceeding from the legislative body. If there should happen to be an irreconcilable variance between the two, that which has the superior obligation and validity ought, of course, to be

preferred; or, in other words, the Constitution ought to be preferred to the statute, the intention of the people to the intention of their agents.
*The Federalist* No. 78 (Modern Library ed. 1937), 506.

**38.** In addition to the factors considered above, this Court considered:

(1) Did the debtor take any action that mislead the Service in its collection efforts?
(2) Did the debtor take any action that would have, outside of bankruptcy, delayed the Service in its collection efforts?
(3) Were any of the debtor's actions fraudulent with respect to the Internal Revenue Service, this Court or the debtor's creditors?
The Court finds that there is no evidence to demonstrate that any of the above circumstances existed.

**39.** This Court is troubled that this debtor's factual circumstances would not have been consid-

this Court, as a consequence of protecting the Service's prerogative to collect past due taxes, to ignore the particular circumstances of the debtors appearing before it. The fact that there are some unscrupulous debtors who will approach bankruptcy with the hidden intent of manipulating the system, does not persuade this Court that every debtor suffering with an income tax predicament should be penalized to the extent of a denial of access to this Court.[40]

A separate order will be entered in conformity with this memorandum opinion.

## ORDER ON RECONSIDERATION OF ORDER DETERMINING DISCHARGEABILITY OF TAX DEBT
## AND
## ORDER ON EQUITABLE ISSUES OF DISCHARGEABILITY OF TAX DEBT

In conformity with the memorandum opinion contemporaneously entered herewith, it is **ORDERED, ADJUDGED and DECREED** that:

1. The memorandum opinion and order entered in *Turner v. United States*, 182 B.R. 317 (Bankr.N.D.Ala.1995) is not modified;

2. The equitable issues before this Court are decided in favor of the debtor and against the Internal Revenue Service;

3. Judgment is entered for the debtor and against the Internal Revenue Service;

4. All income taxes, and the interest and penalties accruing from those taxes, owed by the debtor to the United States for the years 1986, 1987, 1988 and 1989 are dischargeable in this case.

ered but for an initial rejection of the Service's argument that the dischargeability of taxes is automatically delayed. As discussed in note 10, above, the bankruptcy court in *Shedd v. United States (In re Shedd)*, 190 B.R. 692 (Bankr. M.D.Fla.1996) adopted the majority position. In so doing, the Court wrote that it was satisfied that the three-year dischargeability period of sections 523 and 507 was tolled during a bankruptcy case because such a tolling prevented, "uncollected taxes from becoming stale and dischargeable merely because the Government is prevented from collecting such taxes by operation of the automatic stay." *Id.* at 694. What if the government had ample opportunity to collect the taxes but did not and the taxes became "stale and dischargeable merely" because the government failed to collect them? What if the government then asked for more time to collect the taxes using a debtor's previously filed bankruptcy case as justification for the additional time? If the government is ever truly prevented from collecting such taxes, this Court wants to

know that fact. If the government is not diligent in its collection of taxes but relies only on the majority position to allow additional time to collect past due taxes, this Court wants to know that fact as well. In either event, this Court should have an opportunity to consider the facts.

**40.** Ironically, this Court's strict adherence to the plain language of the Bankruptcy Code allows a court the flexibility to consider each case on its merits where the adoption of a broader interpretation produces an absolute rule that the three-year discharge time period is tolled during a pending bankruptcy without consideration of factual circumstances. Where the Service's pumps have been primed by a bankruptcy filing, if the Service is allowed any additional time to collect the past due taxes, that additional time need only be minimal. In such cases, the particular circumstances of debtors would never come before this Court, and few if any repeat debtors would be availed of a discharge of taxes in bankruptcy.